WILLIAM HARRAL, plaintiff in error, *vs.* DAVID R. WRIGHT *et àl.*, executors, defendants in error.

1. If a tenant in common, after tortiously repudiating his co-tenant, resumes the relation before the bar of the statute has intervened, and then repudiates him again, the latter breach of the relation will be a cause of action. And the like rule prevails between bailee and bailor.

2. Where the action is assumpsit for the value of goods converted by a tenant in common or by a bailee, the cause of action is to be considered as having accrued when the defendant *finally* ceased to hold consistently with, or in subordination to, the plaintiff's title, and the plaintiff became aware of it. This time should be ascertained by the jury from all the evidence before them, and not fixed by regarding only a single letter, order, or other document, and the matters specially connected therewith.

3. The law of prescription is not applicable to an action of assumpsit.

4. Where a tenant in common, having possession of the joint property, makes an entry in a book indicating that he no longer holds for his co-tenant, such entry is admissible in his favor, on a plea of the statute of limitations, if notice of it be brought home to the co-tenant; but without such notice, it is not admissible.

5. Notice of an entry in the books of a dissolved copartnership of which both tenants were formerly members, is not notice of a like entry in some other book.

Statute of limitations.    Bailments.    Tenants in common. Prescription.    Evidence.    Notice.    Before Judge TOMPKINS. Richmond Superior Court.    October Term, 1875.

On June 14th, 1875, Harral brought assumpsit against Wright, executor, and Anna C. Jessup, executrix of William C. Jessup, deceased, for $6,249 17, alleged to be due for goods and merchandise assigned to plaintiff by the firm of Nichols, Sherman & Company, of which he was a member, upon its

dissolution, and delivered to defendants' testator to keep for plaintiff until called for. The declaration also contained counts for goods sold and delivered, for money had and received and upon an account stated. The defendants pleaded the general issue and the statute of limitations.

The evidence presented the following facts:

Harral and William C. Jessup were members of a partnership doing business in Newark, New Jersey, New York city, New Orleans, Charleston, South Carolina, and Augusta, Georgia. The other members of the partnership were Barak T. Nichols, Edgar Sherman, Edwin Van Antwerp, Frederick B. Betts, and Samuel A. Church. The parent house was in Newark, where the business was carried on under the firm name of Nichols, Sherman & Company. The New York house was F. B. Betts & Company. The New Orleans house, Edgar Sherman & Company. The Charleston house, Harral, Nichols & Company; and the Augusta house, Sherman, Jessup & Company.

The partnership was dissolved June 1st, 1867, in accordance with articles of dissolution, agreed upon and signed by all the partners. The following are the material provisions of those articles:

F. B. Betts and Edwin Van Antwerp to be trustees to wind up the affairs of the partnership.

An inventory to be taken of all the merchandise in the various houses of the partnership on the 1st of June, 1867, and this merchandise to be divided among the partners in proportion to their respective credits on the books of the consolidated partnership.

The outside indebtedness of the consolidated partnership to be ascertained, then to be apportioned among the partners in proportion to their interest in the consolidation, and notes to be taken by the trustees from each partner for his share of such indebtedness.

The *choses in action* belonging to the partnership to be collected by the trustees, and proceeds applied, *first*, to meet said

notes; *second,* to *pro rata* division among the partners accord-
ing to their interest in the consolidation.

· The above named trustees to superintend and verify the
divisions of merchandise provided for in the articles of dis-
solution.

The dissolution took place at the time agreed upon, and
the trustees entered upon their trust. The inventory showed
the amount of merchandise on ·hand to be divided: $187,-
848 25. Jessup's credit on the books of the consolidation
showed him entitled to receive $15,001 62 of this merchan-
dise, and the plaintiff's, Harral's, credit showed him to be en-
titled to receive $6,249 17. There was merchandise in the
Augusta house to the amount of $45,337 89. The trustees,
carrying out the division, assigned to Jessup, who lived in
Augusta and did business there, his $15,001 62; and to Har-
ral his $6,249 17, out of the merchandise in the Augusta
house. The balance ($24,087 01,) remaining over and above
Jessup's and Harral's portions, seems to have been assigned
to Van Antwerp, Nichols and Betts.

Jessup's proportionate share of the indebtedness of the con-
solidation, for which he was to give his note, was $11,992 62.
Harral's proportion, for which he was to give his note, was
$9,225 08. Neither Jessup nor Harral, in fact, gave any
notes; but Jessup paid off $13,211 47 of the indebtedness.
It does not appear that Harral has ever paid off any of the
indebtedness. The *choses in action* of the consolidation were
not sufficient to pay off its indebtedness. Jessup purchased
from Van Antwerp and Betts their share of the goods in the
Augusta house. He applied, September 6th, 1876, to Har-
ral, by letter, to purchase his portion. He continued the ne-
gotiation, and in a letter of September 16th, 1867, he asks
Harral to instruct him what to do with them. In a letter of
September 17th, 1867, he called upon Harral to insure his
portion of the goods in the Augusta house. September 27th,
1867, he writes Harral that he is informed by the trustees
that he has no authority to turn over goods to him, but that
according to articles of dissolution Harral must take his pro-

portion of merchandise out of the Charleston house. He also tells him he must suspend further negotiations for purchase. There were, in fact, no goods in the Charleston house. The inventory, made out in part, at least, by Jessup, showed this.

On the 26th of May, 1868, the trustees wrote and delivered to Harral the following order:

"Messrs. SHERMAN, JESSUP & COMPANY, Augusta, Ga.:

"*Gents:* In the division of the goods of the consolidation, William Harral was to take his share out of the stock in Augusta. You divided your stock on this basis, and now hold to the credit on your books of Nichols, Sherman & Company, Newark, $6,000 00 and over; this amount being the property of William Harral, you will transmit over to him."

It does not appear that this order was ever exhibited to Jessup.

Jessup held, at the time of his death, real estate of the consolidation worth $2,500 00—known as the "Tan-yard."

Jessup, on the 6th of September, 1867, made entries on his journal and ledger, showing that merchandise to the amount of $6,249 17, was the property of Harral. Subsequently, November 18th, 1867, he made entries in his journal and ledger transferring this amount to Nichols, Sherman & Company. It does not appear that any of these entries were known to Harral, or consented to by him.

James Harral, brother of plaintiff, demanded the goods or Jessup in 1871, when the latter said he had paid more than his share of the debts of the consolidation. When threatened with suit, he requested witness to tell plaintiff that if he would come to Augusta he would endeavor to arrange the matter. The same witness had, about the 29th or 30th day of December, 1872, a similar interview with Jessup, with a like result.

Jessup died December 15th, 1873. After his death, plaintiff had some conversation with defendant, Wright, about the claim. In the course of this conversation, which lasted an hour or two, possibly two hours, he said, in reply to a

question from Wright, "Why he had delayed bringing suit from 1867 until after Mr. Jessup's death?" "Mr. Jessup was an honorable man; if Mr. Jessup had remained alive the suit would never have been brought."

The jury found for the defendants. The plaintiff moved for a new trial upon the following grounds:

1st. Because the verdict was contrary to the law and the evidence.

2d. Because the court erred in admitting in evidence the entries made by Jessup in his books, as set forth in the above statement of facts.

3d. Because the court erred in charging the jury that they might find a refusal to deliver on the part of Jessup from his letter to the plaintiff of September 27th, 1867, and if there was such refusal the statute of limitations commenced running from the receipt of that letter.

4th. Because the court erred in charging that if the jury found that the order signed by F. B. Betts and E. Van Antwerp, was delivered to Jessup, and he refused to deliver on that order, then the statute of limitations commenced running from that refusal, there being no evidence whatever that such order was ever presented or refused.

5th. Because the court refused to charge that possession, to be the foundation of a prescription, must be in the right of the possessor, and not of another, and in saying, in substance, that while this was good law, it did not apply in this case.

6th. Because when the jury returned for further instructions, and a juror stated that they were in doubt about the statute of limitations, and that some of them thought that the order of May 26th, 1868, annulled the letter of September 27th, 1867, the court erred in charging that if the jury believed that Jessup meant by the letter of September 27th, 1867, to refuse to deliver the goods to Harral, and it was so received and understood by Harral, then the statute of limitations began to run, as the right of Harral to sue Jessup was then complete, and if he failed to sue for four years from the

21st of July, 1868, then they should find for the defendants.

7th. Because the court erred in further charging the jury, that if they found that the letter of 27th of September, 1867, was not such a refusal, then if they found from all the evidence, that the order of May 26th, 1868, was presented by Harral to Jessup about that time, and Jessup refused to deliver, then they should find for the defendants.

The motion was overruled and the plaintiff excepted.

BARNES & CUMMINGS, for plaintiff in error.

W. T. GOULD; W. A. WALTON, for defendants.

BLECKLEY, Judge.

If Jessup's possession became adverse for a time, that would go for nothing if, before the bar of the statute attached, the possession ceased to be adverse in consequence of his return to duty, as bailee or co-tenant.  As often as he resumed the cast-off relation, he would come again under the law of that relation.

Judgment reversed.